

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:14cv1058(JCC/JFA) |
| | ) | |
| ROBERT W. TRULAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiffs XL
Specialty Insurance Company, XL Reinsurance America, Inc. and
Greenwich Insurance Company's Audio-Video Group, LLC's ("XL" or
"Plaintiffs") Motion for Temporary Restraining Order and
Preliminary Injunction.  [Dkts. 6, 7.]  For the following
reasons, the Court will grant in part Plaintiffs' Motion for a
Temporary Restraining Order ("TRO").

#### I. Background

Plaintiffs XL Specialty Insurance Co., XL Reinsurance
America, and Greenwich Insurance Company ("Plaintiffs") have
filed this breach of contract action against Defendants claiming
they have failed to deposit collateral as required under an
indemnification agreement between the parties.

In 2011, Defendants executed a general indemnity

agreement ("Indemnity Agreement"), whereby they agreed to indemnify Plaintiffs for liability incurred on several performance bonds issued on behalf of The Truland Group, Inc. ("Truland"), which provides commercial construction services. According to Plaintiffs, Truland recently defaulted on several projects and is facing claims from suppliers and creditors.  To date, Plaintiffs have paid over $1.3 million to subcontractors and suppliers on said performance bonds.

On July 25, 2014, Plaintiffs sent a demand letter requesting that Defendants "pay $1,347,871.78 to indemnify [Plaintiffs] for payments previously made to subcontractors and suppliers . . . [along with] collateral security in the amount of $11,000,000 to cover the initial reserve set by [Plaintiffs] for presently projected losses and expenses[.]"  Plaintiffs further requested that "Defendants provide access to financial records that would be sufficient for [Plaintiffs] to ascertain Defendants' current assets and liabilities, and any transfer of assets which were pledged in trust to [Plaintiffs] under the Indemnity Agreement."  Plaintiffs claim that Defendants have refused to fulfill the demand letter although they are contractually obligated to comply under the Indemnity Agreement. Accordingly, Plaintiffs are seeking an order (1) enjoining Defendants from transferring any assets; (2) compelling Defendants to provide collateral in the amount of Plaintiffs'

reserve as required under the Indemnity Agreement; (3) compelling Defendants to provide an accounting of all present assets; and (4) permitting access to Defendants' financial records.

## II. Standard of Review

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010).

## III. Analysis

### A. Jurisdiction and Venue

As an initial matter, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000.00. Venue is proper under 28 U.S.C. § 1391, as the claims for relief arise

from the breach and enforcement of an indemnity contract that was executed in Fairfax County, Virginia.

### B. TRO and Preliminary Injunction

#### 1. Likelihood of Success on the Merits

A plaintiff seeking a TRO must first establish that he is likely to succeed on the merits.  Here, Plaintiffs brings three claims: (1) breach of the Indemnity Agreement; (2) specific performance; and (3) *quia timet* and injunctive relief. (Pls.' Mot. for TRO at 12.)  Where multiple causes of action are alleged, Plaintiff need only show likelihood of success on one claim to justify injunctive relief.  *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 201 (E.D.N.C. 1995) (citing *Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp. 1287, 1292 n.4 (M.D.N.C. 1989)), *aff'd*, 892 F.2d 74 (4th Cir. 1989).

However, "in cases where the request for preliminary relief encompasses both an injunction to maintain the status quo and to provide mandatory relief, as here, the two requests must be reviewed separately, with the request for mandatory relief being subjected to a more exacting standard of review." *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 703 (E.D. Va. 2000) (emphasis omitted) (quoting *Tiffany v. Forbes Customer Boats, Inc.*, 959 F.2d 232, 1992 WL 67348, at *7 (4th Cir. Apr. 6, 1992) (unpublished table decision)).

As this Court sits in diversity, the law of the forum state must be applied. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Under Virginia choice of law, the law of the place of performance governs questions concerning the performance of a contract. *Sneed v. Am. Bank Stationary Co., Div. of ABS Corp.*, 764 F. Supp. 65, 66-67 (W.D. Va. 1991). Breach is considered to be a performance issue. *Id.* The Indemnity Agreement was executed in Virginia and meant to be performed in Virginia. (Compl. ¶ 2.) Therefore, Virginia law applies to Plaintiffs' claims.

To prevail on its breach of contract claim, Plaintiffs must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, No. 1:08cv955, 2009 WL 111603, *8 (E.D. Va. Jan. 14, 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

"If the agreement is clear and unambiguous, it should be enforced according to its terms." *Am. Ins. Co. v. Egerton*, No. 94-1911, 1995 WL 371452, at *3 (4th Cir. June 12, 1995) (citing *Fid. & Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (stating existence of express indemnification contract requires court to determine

surety's rights in accordance with terms of that contract)); *see also Int'l Fidelity Ins. Co. v. Waterfront Grp. NC, LLC*, No. 3:11-CV-0016-FDW, 2011 WL 2693337, *3 (W.D.N.C. July 11, 2011) ("Sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.") (quoting *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)).

Here, Plaintiffs have demonstrated that they will likely prevail on the three elements of breach of contract. As to the first element, it appears from Plaintiffs' motion that Defendants executed an enforceable Indemnity Agreement in which they expressly agreed to indemnify Plaintiffs by depositing funds or pledging collateral upon demand. Section II(B)(V) of the Indemnity Agreement sets the amount of collateral Plaintiffs are entitled to demand. At the option of the Plaintiffs, the amount shall be either the sum of all pending claims or "the reserve established by [Plaintiffs] as a consequence of having issued bonds on behalf of [Defendants] whether on account of an actual liability or one which is, or may be, asserted against [Plaintiffs] and whether or not any payment for such loss has been made." (Pls.' Mot. for TRO at 7.) The Indemnity Agreement further provides that Plaintiffs shall have access to

Defendants' books, records, and accounts and that Defendants
will provide any requested financial information to the
Plaintiffs.  (*Id.* at 8.)

Second, Plaintiffs likely will prevail in proving
Defendants have breached the agreement.  Defendants have yet to
indemnify Plaintiffs for the $1,347,872 payment on bond claims
that Plaintiffs have already spent.  (*Id.* at 10.)  To cover
potential losses arising from claims against the bonds,
Plaintiffs have set a reserve of $11,225,552.  (*Id.*)  Plaintiffs
have made demand on Defendants to post collateral security equal
to the reserve as well as to provide access to Defendants'
financial records.  (Pls.' Mot. for TRO at 10-11.)  Defendants
have done neither.  (*Id.*)

Finally, Plaintiffs likely will prevail in
demonstrating injury from the Defendants' breach.  Defendants
have failed to indemnify Plaintiffs for losses already incurred.
(*Id.* at 10-11.)  All but one of the entities operating under the
umbrella of the Truland Group has declared bankruptcy.  (*Id.* at
10.)  This, along with the over sixty claims against bonds
pending and the over $1.3 million that has already been paid to
satisfy claims indicates that Plaintiffs' future exposure will
likely be substantial. Furthermore, Defendants' failure to
provide requested financial records has prevented Plaintiffs
from identifying any undisclosed assets and securing its

position with regard to Defendants' already disclosed assets.
(*Id.* at 3.)   Thus, Plaintiffs have demonstrated that they are
likely to prevail on the merits of the breach of contract claim.

## 2.   Irreparable Harm

The plaintiff must "make a clear showing that it is
likely to be irreparably harmed absent preliminary relief."
*Real Truth About Obama*, 575 F.3d at 347 (emphasis added).
"[G]enerally irreparable injury is suffered when monetary
damages are difficult to ascertain or are inadequate."   *Multi-
Channel TV Cable Co. v. Charlottesville Quality Cable Operating
Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v.
Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)).   Irreparable
harm must be "neither remote nor speculative, but actual and
imminent."   *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952
F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted).

In the instant action, without temporary injunctive
relief, Plaintiffs will suffer immediate and irreparable harm.
First, as part of the bargained-for agreement, Defendants agreed
to pledge collateral.   Plaintiffs are not receiving the benefit
of this bargain, as they are currently facing substantial,
uncollateralized exposure from over sixty claims against the
bonds.   Collateral security is meant to protect against this
very risk.   Absent enforcement of the collateral security
obligation, Plaintiffs would be in the same position as any

other unsecured creditor of the Defendants.  *See Int'l Fid. Ins. Co. v. Anchor Envtl, Inc.*, No. 07-04750, 2008 WL 1931004, at *7 (E.D. Pa. 2008) ("To protect the surety from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted.").  Ex post money damages are inadequate to protect Plaintiffs' expectancy, as the very essence of collateral is to safeguard the surety from losses before it is required to discharge any claims.  *Int'l Fid. Ins. Co.*, 2011 WL 4715155, at *4 ("[C]ourts routinely recognize that a surety's loss of its right to collaterization cannot be adequately remedied through monetary damages.); *First Nat'l Ins. Co. of Am. V. Sappah Bros. Inc.*, 771 F. Supp. 2d 569, 574 (E.D.N.C. 2011) ("The court finds [Plaintiff] would suffer irreparable harm in the absence of preliminary injunctive relief in the form of collateral security.").

Second, without an accounting of previously pledged and currently held assets and access to Defendants' financials, Plaintiffs are in the dark as to their chances of successful performance of the contract.  Plaintiffs have no idea whether and what extent Defendants can satisfy their indemnity obligation or whether assets defendant pledged to hold in trust for the Plaintiffs have been transferred.  (Pls.' Mot. for TRO at 13.)

Therefore, Plaintiffs have demonstrated that they will suffer irreparable harm from Defendants' failure to post collateral security.

### 3.   Balance of Equities

Given the information presently before this Court, the balance of equities tips in favor of Plaintiffs.  Defendants have contracted to provide collateral security in an amount to be determined by the Plaintiffs.  Defendants have also contracted to provide financial records as requested by the Plaintiffs.  "[R]equiring a party to comply with its contractual obligations does not constitute harm."  *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008).  Defendants have not responded to this motion, and it is possible they may have suffered a hardship that is not addressed by Plaintiffs' filing.  But, based on the record presently before the Court, the balance of equities weighs in Plaintiffs' favor.

### 4.   Public Interest

The public interest favors issuing a TRO.  The law of both the Fourth Circuit and Virginia favor enforcements of contracts.  *See Smithy Braedon Co. v. Hadid*, 825 F.2d 787, 790 (4th Cir. 1987) (stating "the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear.") (quoting *Dr. Miles Medical Co. v. John D. Park & Sons, Co.*, 220 U.S. 373, 411

(1991) (Holmes, J. dissenting)); *Meissel v. Finley*, 95 S.E.2d 186, 191 (Va. 1956) ("While the law frowns upon unreasonable restrictions, it favors the enforcement of contracts intended to protect legitimate interests."). Requiring Defendants to perform their contractual obligations of posting collateral security and providing financial records is consistent with this policy.

### IV. Conclusion

For these reasons, the Court will grant in part the Plaintiffs' Motion for a TRO.

An appropriate order will issue.

/s/
James C. Cacheris
United States District Judge

August 21, 2014                    James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE