```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF VIRGINIA

                            Alexandria Division


XL SPECIALTY INSURANCE           )
COMPANY, et al.,                 )
                                 )
     Plaintiffs,                 )
                                 )
          v.                     )    1:14cv1058(JCC/JFA)
                                 )
ROBERT W. TRULAND, et al.,       )
                                 )
     Defendants.                 )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiffs XL Specialty Insurance Co., XL Reinsurance America Inc., and Greenwich Insurance Co.'s ("Plaintiffs" or "XL") Motion to Dismiss, or in the Alternative, to Strike Mary W. Truland's Amended Counterclaim.  [Dkt. 43.]  For the following reasons, the Court will grant XL's motion and dismiss the amended counterclaim.

**I. Background**

Though this litigation has only been pending since August of 2014, the Court is well-versed with the facts.  As relevant here, XL, a surety for construction contractors, issued numerous payment and performance bonds on behalf of the Truland Entities in reliance upon the terms of an Indemnity Agreement.  (Pls.' Mem. in Supp. [Dkt. 43-1] at 1-2.)  The indemnitors

1

included various corporate entities as well as Robert and Mary Truland. (*Id.*) According to XL, the indemnitors, including Mary Truland, promised to deposit collateral security to exonerate and hold XL harmless from any losses or liability that XL may incur by issuing the bonds. (*Id.* at 2.) The Indemnity Agreement also contained an indemnification clause, requiring the indemnitors to reimburse XL for any losses, claims, liabilities, damages, and fees. (*Id.*)

The Truland Entities incurred substantial debts to their subcontractors and suppliers for the bonded projects. (Compl. [Dkt. 1] ¶ 32.) As a result, subcontractors and suppliers were not paid by Truland Entities, and those subcontractors and suppliers have submitted claims for payment from XL under the bonds. (*Id.* ¶ 33.) XL brought this suit to enforce the collateral security and indemnification provisions of the Indemnity Agreement, naming the sole non-bankrupt Truland Entity, A&E Technologies, Inc., and Robert and Mary Truland as defendants.

Mary Truland answered the complaint, asserting sixteen affirmative defenses. (*See* Answer [Dkt. 27].) As her first affirmative defense, Mrs. Truland asserts that the complaint fails to state a claim upon which relief may be granted. (*Id.* at 1.) In support, Mrs. Truland points to Section XXIII of the Indemnity Agreement, which reads in part:

2

> [T]he liability and obligaton's [sic] of Mary Truland hereunder shall only extend to and be enforceable against those assets jointly held by the Individual Indemnitors [Robert and Mary], and to any and all property she has received or may hereafter receive from Robert Truland and shall not extend and be enforceable against her sole and separate estate.

(*Id.* at 2.)  The agreement was amended twice after it was initially signed, but those amendments are not at issue here.

Mrs. Truland filed a counterclaim and shortly thereafter amended it.  [Dkts. 28, 33.]  In this declaratory judgment action, she asks the Court to find that her membership interests in three assets – Truland Holdings, Truland Partners, and Belgarde – are part of her sole and separate estate, were not received from Dr. Truland, and therefore are not part of her obligations under the Indemnity Agreement.  (Am. Countcl. [Dkt. 33] ¶ 88.)  XL has filed the instant motion, seeking to dismiss the counterclaim on grounds that it merely restates an affirmative defense already at issue in the litigation.  (Pls.' Mem. at 3.)  XL requested a hearing on this motion [Dkt. 59], but both parties later agreed to have the Court take it on the papers.  *See* Fed. R. Civ. P. 78(b); E.D. Va. Local Civil Rule 7(J).  Therefore, the Court dispenses with oral argument and issues this ruling without a hearing.  Having been fully briefed, then, XL's motion is ripe for disposition.

## II. Legal Standard

Whether a court will entertain a counterclaim for declaratory judgment rests within the sound discretion of that court. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 296-97 (4th Cir. 2005). Some courts have exercised their discretion to dismiss declaratory judgment counterclaims pursuant to Federal Rule of Civil Procedure 12(f) when the declaratory relief sought is redundant in light of the claims raised in the complaint. As one court explained:

> [I]f a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before . . . dismissing the action. Although federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to considerations of practicality and wise judicial administration. District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses.

*Monster Daddy LLC v. Monster Cable Prods., Inc.*, C.A. No. 6:10-1170-HMH, 2010 WL 4853661, *6 (D. S.C. Nov. 23, 2010) (quoting *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006) (citations and internal quotation marks omitted)). Conversely, the court should adjudicate declaratory judgment actions "when it finds that the declaratory relief sought (i) will serve a

useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted).

### III. Analysis

Mrs. Truland attempts to distinguish her first affirmative defense by arguing that the limitation of individual indemnity in Section XXIII of the Indemnity Agreement "precludes XL from being able to claim that Mary breached [the collateral security provision] of the contract." (Mary Truland's Opp. [Dkt. 53] at 5.) In contrast, the counterclaim "seeks a declaration that the Indemnity Agreement does not extend to and is not enforceable against specific assets." (*Id.*) Mrs. Truland claims that while these issues overlap, they are not identical. (*Id.*)

The Court disagrees with Mrs. Truland's parsing of words because the first affirmative defense and the counterclaim are repetitious. Both ultimately seek to answer the same question: identifying what, if any, obligations Mrs. Truland has under the Indemnity Agreement. This Court began the December 17, 2014 evidentiary hearing on XL's motion for preliminary injunction by stating that both Mary and Robert Truland are contractually obligated to post collateral. While this ruling

does not answer the question of what specific assets Mrs. Truland must pledge, the next step – determining what assets can be used to satisfy that obligation - necessarily excludes assets that she owns separately.  Therefore, the question of whether Mrs. Truland's membership interests in Belgarde, Truland Holdings, and Truland Partners are part of her sole and separate estate will already be resolved during the litigation.  A declaratory judgment action would not add anything to the proceedings, as it would not settle the legal relations at issue nor will it remove uncertainty.

## IV. Conclusion

For the reasons set forth above, the Court will grant XL's motion and dismiss the amended counterclaim.  An appropriate order will follow.

December 23, 2014                         /s/
Alexandria, Virginia            James C. Cacheris
                        UNITED STATES DISTRICT COURT JUDGE