```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


XL SPECIALTY INSURANCE          )
COMPANY, et al.,                )
                                )
     Plaintiffs,                )
                                )
          v.                    )     1:14cv1058(JCC/JFA)
                                )
ROBERT W. TRULAND, et al.,      )
                                )
     Defendants.                )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Robert Truland and Mary Truland's Motion to Dismiss Counts IV through VII and Count X of the Amended Complaint. [Dkt. 98.] For the following reasons, the Court will grant in part and deny in part the motion.

## I. Background

Though this litigation has only been pending since August of 2014, the Court is well-versed with the facts. As relevant here, Plaintiffs, sureties for construction contractors, issued numerous payment and performance bonds on behalf of the Truland Entities in reliance upon the terms of an Indemnity Agreement and two subsequent amendments. (Am. Compl. [Dkt. 94] ¶¶ 32, 53-59.) The indemnitors included various

1

corporate entities as well as Robert and Mary Truland individually. (*Id.* ¶ 9.)

As part of the negotiations for the Indemnity Agreement, Robert and Mary Truland ("Defendants") agreed to provide Plaintiffs with documentation of their personal financial condition. (*Id.* ¶ 17.) After some back and forth between the parties, Defendants provided the requested information, and the Indemnity Agreement was signed on July 26, 2011 in Fairfax County, Virginia. (*Id.* ¶¶ 18-23, 32.) It was subsequently amended twice. (*Id.* ¶ 53-59.) Defendants provided updated personal financial information before the second amendment in 2013. (*Id.* ¶¶ 55-59.)

According to the terms of the Indemnity Agreement, the indemnitors promised to deposit collateral security to exonerate and hold Plaintiffs harmless from any losses or liability that Plaintiffs may incur by issuing payment and performance bonds on behalf of the Truland Entities. (*Id.* ¶¶ 41-42.) The Indemnity Agreement also contained an indemnification clause, requiring the indemnitors to reimburse Plaintiffs for any losses, claims, liabilities, damages, and fees incurred as a result of Plaintiffs' issuance of the bonds. (*Id.*)

On or about July 23, 2014, the Truland Entities ceased operations on all ongoing projects and filed for bankruptcy. (*Id.* ¶ 98.) Consequently, Plaintiffs received demands bonds

2

totally approximately $24 million.  (*Id.* ¶ 105.)  Plaintiffs commenced this litigation in August 2014 to enforce the collateral security and indemnification provisions of the Indemnity Agreement, naming the sole non-bankrupt Truland Entity, A&E Technologies, Inc., and Robert and Mary Truland as defendants.  (*Id.* ¶¶ 3-7.)

Plaintiffs requested a temporary restraining order ("TRO"), which was granted in part.  (*See* 8/21/14 Mem. Op. & Order [Dkts. 11-12].)  The parties were able to reach an agreement on the terms of a preliminary injunction.  (*See* 12/19/14 Consent Order [Dkt. 87].)  With leave of Court, Plaintiffs filed an Amended Complaint on January 6, 2015.  (*See* 1/5/15 Order [Dkt. 93]; Am. Compl. [Dkt. 94].)  The Amended Complaint sets forth ten causes of action.  Defendants timely moved to dismiss five of those counts for failure to state a claim: fraud/misrepresentation in the inducement ("Count IV"); constructive fraud in the inducement ("Count V"); fraud/misrepresentation in the inducement of continued bonding relationship ("Count VI"); constructive fraud/misrepresentation in the inducement of continued bonding relationship ("Count VII"); and breach of fiduciary duty ("Count X").  (Defs.' Mot. to Dismiss [Dkt. 98].)  Having been fully briefed and argued, this motion is ripe for disposition.

**II. Legal Standard**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint[.]" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). To survive a motion to dismiss, a plaintiff's complaint must demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Legal conclusions couched as factual allegations are not

4

sufficient.  *Twombly*, 550 U.S. at 555.  Hence, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.  Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Moreover, the plaintiff does not have to show a likelihood of success on the merits.  Rather, the complaint must merely allege – directly or indirectly – each element of a "viable legal theory."  *Twombly*, 550 U.S. at 562-63.

### III. Analysis

At the outset, the Court must clarify which law to apply to the claims at issue. *See Zaklit v. Global Linguist Solutions, LLC*, No. 1:14cv314 (JCC/JFA), 2014 WL 3109804, at *4 (E.D. Va. July 8, 2014) ("[B]efore addressing a motion to dismiss, the Court must first resolve the choice of law question to determine the applicable law relevant to each claim.") (citation and internal quotation marks omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Brickyard Vessels, Inc.*, No. 1:14cv921 (JCC/IDD), 2014 WL 5684585, at *2 (E.D. Va. Nov. 4, 2014) (stating that the Court must determine what law governs the counterclaims before analyzing whether to dismiss them).  Defendants' motion assumes that Virginia law applies, while Plaintiffs plead both Maryland and Virginia law in the

alternative. This Court applied Virginia law to the breach of contract claims on Plaintiffs' motion for a temporary restraining order. (*See* 8/21/14 Mem. Op. at 5.) Since the tort claims are related to the contract, Virginia law will govern the interpretation of the tort claims. *See Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 545 (W.D. Va. 2013) (stating that a choice-of-law provision should, absent intent otherwise, be read to encompass all disputes that arise from or are related to a contract); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) ("Where a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims such as fraudulent inducement, other courts have honored the intent of the parties to choose the applicable law."); *Nw. Airlines v. Astraea Aviation Servs., Inc.*, 111 F.3D 1386, 1392 (8th Cir. 1997) (stating that tort claims fell within the scope of the choice-of-law provision because the claims "are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contracts would be governed by Minnesota law."); *Custom Foam Works, Inc. v. Hydrotech Sys., Ltd.*, No. 09-cv-0710-MJR, 2011 WL 1102812, at *1 (S.D. Ill. Mar. 23, 2011) ("Claims involving fraud in the formation of the contract are subject to that contract's choice

of law provisions.") (citation and internal quotation marks omitted).

### A. Fraud in the Inducement (Counts IV-VII)

#### 1. Cause of Action

Plaintiffs have alleged that the Trulands fraudulently induced them to enter into a bonding relationship and to continue that relationship through misrepresenting the ownership of certain assets, the ability of the Trulands to pledge those assets, and the value of the assets. In their opposition to this motion, Plaintiffs state that the tort and contract claims do not have to be pled in the alternative. However, in the Amended Complaint, the fraud counts do not incorporate by reference the contract claims and are listed as "in the alternative." (Am. Compl. ¶¶ 144, 152, 154, 162.) Defendants counter that the fraud claims arise out of the Indemnity Agreement and that they are barred because the parties have a contractual relationship. (Def.'s Mem. in Supp. at 4-5.) If such causes of action are allowed, Defendants also challenge whether Plaintiffs have sufficiently pled fraud. (*Id.* at 7-9.) The Court addresses each in turn.

Virginia recognizes the separate tort of fraud, even when the parties have agreed to a contract. *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446-47 (4th Cir. 1990) (citing Virginia law). "[A]n action based upon fraud must

aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.  Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Abi-Najm v. Concord Condo.*, 699 S.E.2d 483, 490 (Va. 2010) (citation and internal quotation marks omitted).  In *Abi-Najm*, the defendant perpetrated the alleged fraud before a contract between the two parties came into existence.  *Id.*  The Supreme Court of Virginia held "it cannot logically follow that the duty [the defendant] allegedly breached was one that finds its source in the contracts." *Id.*; *see also Specialty Prods., Inc. v. Demolition Servs. Inc.*, No. CL12-8830,  2013 WL 9564185, at *5 (Va. Cir. Ct. Dec. 12, 2013) ("Because fraud in the inducement to a contract occurs before the contract is formed and therefore before any contractual duties can attach, an allegation of fraud in the inducement necessarily alleges the breach of the common-law duty not to defraud others and sounds in tort.").

Here, Plaintiffs have alleged that prior to the formation of the Indemnity Agreement on July 26, 2011, Defendants provided personal financial information that Defendants knew or should have known to be false.  (Am. Compl. ¶¶ 17-31.)  In reliance on those statements, Plaintiffs agreed to enter into a contractual relationship.  (*Id.* ¶¶ 26, 31.)

Like in *Abi-Najm*, the alleged fraud here was perpetrated before the contracts came into existence, and therefore Plaintiffs may properly bring tort claims separate from their contract claims. Additionally, before the Indemnity Agreement was amended in 2013, Defendants again provided personal financial information that Plaintiff alleges was an intentional or negligent misrepresentation of Defendants' financial status. (*Id.* ¶ 56.) Contrary to Defendants' assertion, this is also actionable in tort. Though there was a contract existing between the parties at the time, the 2013 financial statements were produced to induce a new contractual relationship.

Defendants argue that the duty to provide accurate financial statements arises from the contract itself. (Defs.' Mem. in Supp. at 6.) By signing the Indemnity Agreement, Defendants warranted the accuracy of financial information provided to Plaintiffs.[1] (Am. Compl. ¶ 48.) However, had this provision not been in the contract, this would not have meant

---

[1] When considering a motion to dismiss, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, courts may consider "documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2009) (citation omitted). Here, the Amended Complaint explicitly references the Indemnity Agreement, and the Court will consider it in resolving this motion.

that Defendants were free to provide inaccurate financial information. *See Nystrom v. Servus Robots, LLC*, No. LF-1517-3, 2000 WL 249246, at *3 (Va. Cir. Ct. Mar. 2, 2000) ("[Defendant] clearly would have a common law duty not to defraud and mislead [plaintiff] at the time of formation about [defendant's] intentions to perform under the alleged contract.  A contrary finding would extinguish actions for fraud in the inducement of contracts.").  In other words, Defendants had a legal duty to provide accurate information regardless of the terms of the contract.  Therefore, any breach of duty does not arise exclusively from the contracts, and Plaintiffs may bring both tort claims and contract claims.

### 2. Pleading Requirements

Defendants also challenge whether Plaintiffs have sufficiently pled fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).[2]  The purpose of this higher pleading standard is to provide notice to defendant of

---

[2] In support of their argument that Plaintiffs have failed to plead fraud with sufficient specificity, Defendants cite to Virginia law.  (Defs.' Mem. in Supp. at 7.)  Though this Court applies Virginia law, federal procedural law governs pleading requirements.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938) (stating that state substantive law applies in diversity cases and noting "[n]o one doubts federal power over procedure."); Fed. R. Civ. P. 1 ('These rules govern the procedure in all civil actions and proceedings in United States district courts[.]").

the alleged misconduct, prevent frivolous suits, eliminate fraud actions in which the facts are learned after discovery, and protect defendants' reputation and goodwill. *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014). To satisfy the requirements of Rule 9(b), a plaintiff must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013)).

The elements of fraud in the inducement are (1) false representation of material fact; (2) reliance; and (3) inducement to enter the contract. *Abi-Najm*, 699 S.E.2d at 489; *see In re Myrtle*, 500 B.R. 441, 450 (Bankr. W.D. Va. 2013). As to mental state, a plaintiff must plead that the misrepresentation was made intentionally, if pleading actual fraud, or negligently, if pleading constructive fraud. *See Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014).[3]

Plaintiffs have met their burden to plead fraud with sufficient specificity as to Counts IV and V of the Amended Complaint, which concern the 2011 financial information provided

---

[3] Plaintiffs need only allege mental state generally, *see* Fed. R. Civ. P. 9(b), and Plaintiffs have met this burden with respect to all four counts. (Am. Compl. ¶¶ 147-149, 153, 157-159, 163.)

before the Indemnity Agreement was signed. Plaintiffs allege that in July of 2011, Defendants agreed to provide Plaintiffs with documentation of their financial condition and personal assets to demonstrate their financial strength as indemnitors. (Am. Compl. ¶ 17.) On July 7, 2011 Defendants provided Plaintiffs with a personal financial statement dated June 15, 2011. (*Id.* ¶ 18.) After receiving this information, Plaintiffs requested more specific information. (*Id.* ¶ 20.) In response, on July 18 Defendants provided a more detailed financial statement. (*Id.* ¶ 21.) The amended financial statement had eight columns of financial information, identifying assets as "joint," "MWT Individual," and "RWT Individual." (*Id.* ¶ 22.) Based on this financial statement, Plaintiffs agreed to Defendants' modification of the contract language pertaining to individual liability. (*Id.* ¶ 24.) Additionally, Plaintiffs reasonably relied on the accuracy of the financial information and the information was material to Plaintiffs' decision to issue the bonds. (*Id.* ¶¶ 25-26.) Plaintiffs also allege that Defendants failed to disclose the existence of the MWT Trust and the RWT Trust and its potential impact on the value and percentage ownership of the assets listed on the financial statement. (*Id.* ¶ 28.) Finally, Plaintiffs allege that at no time prior to the execution of the Indemnity Agreement did Defendants or anyone else inform Plaintiffs that "one or more

12

assets listed on the 2011 Financial Statements were not held jointly as represented, did not have the value as represented," and/or were subject to provisions that prevented Defendants from pledging their interest in the assets as collateral.  (*Id.* ¶ 29.)  As a result of the misrepresentations, Plaintiffs allege that it was induced to enter into a bonding relationship with Defendants that it would not have otherwise entered.  (*Id.* ¶ 151.)  With respect to the 2011 Indemnity Agreement, Plaintiffs have therefore shown the "'who, what, when, where, and how of the alleged fraud.'"  *Murphy*, 589 F. App'x at 652 (citing *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).

        Plaintiffs likewise have met their burden with respect to the 2013 financial statements provided before the Second Amendment to the Indemnity Agreement was signed, which is the basis for Counts VI and VII.  Plaintiffs allege that prior to the execution of the Second Amendment of the Indemnity Agreement, on or about February 13, 2013 Defendants provided another personal financial statement dated January 31, 2013.  (*Id.* ¶ 56.)  Plaintiffs also allege that they reasonably and justifiably relied on these statements in entering into the Second Amendment and the statements were material to Plaintiffs' decision to continue the bonding relationship.  (*Id.* ¶ 58.)  In fact, in reliance on the 2013 financial statement, Plaintiffs

removed Dr. Truland's $10 million cap on liability, a change from the 2011 Indemnity Agreement. (*Id.* ¶¶ 58-59.)

Defendants claim that Plaintiffs are required to specify which of the assets it claims were misrepresented and in what manner in order to satisfy Rule 9(b). (Defs.' Mem. in Supp. at 8.) The implication of Plaintiffs' allegations is that the *entire* financial statement is false. Therefore, it is not necessary to specify which assets were misrepresented, because according to Plaintiffs, Defendants misrepresented the value and alienability of every asset that was listed on the financial statement. Therefore, considering the allegations in the Amended Complaint, Plaintiffs have met their burden under Rule 9(b) to allege fraud with sufficient specificity.

### 3. Statute of Limitations

Defendants allege Counts IV and V are barred by the statute of limitations. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [it] does not resolve contests surrounding the facts, the merits of a claim, or *the applicability of defenses*." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (emphasis added). Typically, a statute of limitations affirmative defense must be raised under Federal Rule of Civil Procedure 8(c), and the burden of establishing the affirmative defense rests on the defendant. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th

14

Cir. 2007). "Such an affirmative defense has no bearing on whether Plaintiff has adequately stated a claim for relief." *Manchanda v. Hays Worldwide, LLC*, No. 1:14CV1339 JCC/TCB, 2014 WL 7239095, at *2 (E.D. Va. Dec. 17, 2014).

However, where the facts as alleged in the complaint are sufficient to rule on a statute of limitations affirmative defense, the Court may reach this defense "by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464. "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (additional citation omitted). Thus, the Court must decide whether all facts necessary to conclude that Plaintiffs' claims are barred by the statute of limitations appear on the face of the Amended Complaint. In examining the Amended Complaint and the applicable statute of limitations,[4] the Court finds that there is

---

[4] The statute of limitations for fraud actions in Virginia is two years "after the cause of action accrues." Va. Code Ann. § 8.01-243(A). The cause of action does not accrue in fraud cases until such fraud is discovered "or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249(1). Ultimately, the burden is on the plaintiff to "prove that, despite the exercise of due diligence, [they] could not have discovered the alleged fraud except within the two-year period before he commenced the action." *Dunlap v. Texas Guaranteed*, 590 F. App'x 244, 244 (4th Cir. 2015) (citing *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 839 (Va. 2008)).

15

not enough information for the Court to determine at this time whether Plaintiffs' fraud claims are time-barred. Therefore, Defendants' motion to dismiss the claims on grounds that they are untimely will be denied.

In light of the foregoing, Defendants' motion to dismiss Counts IV, V, VI, and VII will be denied.

### B. Breach of Fiduciary Duty

Count X of the Amended Complaint alleges that Defendants breached their fiduciary duty to hold their assets in trust for Plaintiffs by conveying those assets for less than fair market value without Plaintiffs' permission. (Am. Compl. ¶¶ 175-176.) Defendants argue the breach of fiduciary duty claim arises solely because of the contract and may not be brought as a separate claim. (Defs.' Mem. in Supp. at 6.)

In Virginia, "a common law duty must exist separate from a contractual duty in order to pursue both a claim for breach of contract and a claim for breach of fiduciary duty." *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F. Supp. 2d 652, 661 (E.D. Va. 2002). As the Supreme Court of Virginia explained,

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not

16

> upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Richmond Metro Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).

Here, the Indemnity Agreement creates the trust relationship between Defendants (trustees) and Plaintiffs (beneficiaries). Outside of the contractual relationship, Defendants owed no independent common law duty to Plaintiffs. *See Stone Castle Financial*, 191 F. Supp. 2d at 661 (citation and internal quotation marks omitted) (stating courts will recognize claims for both breach of contract and breach of fiduciary duty so long as "the duty tortiously or negligently breached [is] a common law duty, not one existing between the parties solely by virtue of the contract."); cf. *Marsteller v. ECS Federal, Inc.*, No. 1:13cv593, 2013 WL 4781786, at *9 (E.D. Va. Sept. 5, 2013) (finding that employee had independent common law duty of loyalty to her employer); *Stone Castle Financial*, 191 F. Supp. 2d at 661 (finding that defendant had an independent common law duty to keep plaintiff's information confidential). Nor was there any common law agency relationship created between the two parties here outside of the contract. *Cf. Cook v. John Hancock Life Ins. Co. (U.S.A.)*, No. 7-12cv455, 2015 WL 178108, at *15

(W.D. Va. Jan. 14, 2015) (finding that separate agency relationship existed with its own separate fiduciary duties). Therefore, Plaintiffs' claim for breach of fiduciary duty is subsumed within its breach of contract claims, and as such Count X will be dismissed.[5]

### C. Fraudulent Conveyance

Plaintiffs have pled two claims for fraudulent conveyance in the alternative.  Count VIII alleges fraudulent conveyance in violation of the Maryland Uniform Fraudulent Conveyance Act; Count IX alleges fraudulent conveyance in violation of Virginia law.  (Am. Compl. ¶¶ 164-173.)  Under Federal Rule of Civil Procedure 12(f), the Court has power to strike *sua sponte* "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f)(a).  As the Court has determined Virginia law will apply to this case, it will strike Count VIII from the Amended Complaint.

---

[5] Defendants also argue Count X should be dismissed because of the statute of limitations.  As noted earlier, to succeed in asserting the statute of limitations defense at the motion to dismiss stage, all necessary information must be present on the face of the complaint.  As before, such information does not appear on the face of the Amended Complaint and therefore the statute of limitations is not an independently sufficient basis to dismiss this claim.

## IV. Conclusion

For the reasons set forth above, the Court will grant in part and deny in part Defendants' motion.  An appropriate order will follow.

March 3, 2015  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE