IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) 1:14cv1058(JCC/JFA) ) |
| ROBERT W. TRULAND, *et al.*, | ) ) ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiffs XL Specialty Insurance Co., XL Reinsurance America Inc., and Greenwich Insurance Co.'s ("Plaintiffs" or "XL") Motion to Dismiss Robert and Mary Truland's Counterclaims. [Dkt. 107.] For the following reasons, the Court will grant XL's motion and dismiss the counterclaims.

**I. Background**

Though this litigation has only been pending since August of 2014, the Court is well-versed with the facts. As relevant here, Plaintiffs, sureties for construction contractors, issued numerous payment and performance bonds on behalf of the Truland Entities in reliance upon the terms of an Indemnity Agreement and two subsequent amendments. (Am. Compl. [Dkt. 94] ¶¶ 32, 53-59.) The indemnitors included various

1

corporate entities as well as Robert and Mary Truland individually.  (*Id.* ¶ 9.)  According to the terms of the Indemnity Agreement, the indemnitors promised to deposit collateral security to exonerate and hold Plaintiffs harmless from any losses or liability that Plaintiffs may incur by issuing payment and performance bonds on behalf of the Truland Entities.  (*Id.* ¶¶ 41-42.)  The Indemnity Agreement also contained an indemnification clause, requiring the indemnitors to reimburse Plaintiffs for any losses, claims, liabilities, damages, and fees incurred as a result of Plaintiffs' issuance of the bonds.  (*Id.*)

On or about July 23, 2014, the Truland Entities ceased operations on all ongoing projects and filed for bankruptcy.  (*Id.* ¶ 98.)  Consequently, Plaintiffs received demands bonds totally approximately $24 million.  (*Id.* ¶ 105.)  Plaintiffs commenced this litigation in August 2014 to enforce the collateral security and indemnification provisions of the Indemnity Agreement, naming the sole non-bankrupt Truland Entity, A&E Technologies, Inc., and Robert and Mary Truland as defendants.  (*Id.* ¶¶ 3-7.)

Plaintiffs requested a temporary restraining order ("TRO"), which was granted in part.  (*See* 8/21/14 Mem. Op. & Order [Dkts. 11-12].)  The parties were able to reach an agreement on the terms of a preliminary injunction.  (*See*

12/19/14 Consent Order [Dkt. 87].)  With leave of Court, Plaintiffs filed an Amended Complaint on January 6, 2015.  (*See* 1/5/15 Order [Dkt. 93]; Am. Compl. [Dkt. 94].)  Defendants counterclaimed, asserting four causes of action: a laundry list of violations of Title 8.9A of the Uniform Commercial Code ("UCC") ("Count One"); breach of contract ("Count Two"); failure to provide accounting ("Count Three"); and "damages and injunction" related to the unlawful financing statements ("Count Four").  (Countercl. [Dkt. 95] ¶¶ 97-119.)

Defendants also answered.  Robert Truland asserted several affirmative defenses.  He argues Plaintiffs' claims are barred to the extent that Plaintiffs did not comply with all applicable provisions of the UCC and that they breached their obligations to Robert Truland under the Indemnity Agreement. (Robert Truland's Answer [Dkt. 100] at 24-25.)  He also asserts Plaintiffs' claims are barred due to their failure to account. (*Id.* at 25.)  In her answer, Mary Truland asserts twenty-two affirmative defenses. She claims Plaintiffs are barred from recovery by their failure: to use reasonable care in the custody and preservation of collateral, to proceed in a commercially reasonable manner to enforce the Truland Entity Contracts and to collect sums owed to the Truland Entities, to comply with their obligation as a secured party under the UCC to dispose of collateral in a commercially reasonable manner; to provide a

full accounting of unpaid obligations under the bonds subject to the Indemnity Agreement, and to mitigate damages.  (Mary Truland's Answer [Dkt. 101] at 10.)  Mary Truland also asserts Plaintiffs cannot recover because of their bad faith and material breaches of contract.  (*Id.* at 11.)  Her answer adopts any affirmative defenses raised by Robert Truland.  (*Id.*)

Plaintiffs moved to dismiss the counterclaims, arguing that they are repetitive of Defendants' affirmative defenses.  (Pls.' Mem. in Supp. [Dkt. 107] at 4-9.)  Alternatively, Plaintiffs argue that the counterclaims fail on the merits.  (*Id.* at 9-22.)  Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint[.]"  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Supreme Court has stated that in order "[t]o survive a motion to dismiss, a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Id.* The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his or her claims.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted). To survive a motion to dismiss, a plaintiff's complaint must demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Legal conclusions couched as factual allegations are not sufficient. *Twombly*, 550 U.S. at 555. Hence, a pleading that offers only "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

Moreover, the plaintiff does not have to show a likelihood of success on the merits. Rather, the complaint must merely allege – directly or indirectly – each element of a "viable legal theory." *Twombly*, 550 U.S. at 562-63.

### III. Analysis

Plaintiffs argue that the four counterclaims must fail because the claims are merely Defendants' affirmative defenses in disguise. (Pls.' Mem. in Supp. at 6.) Where a counterclaim mirrors an affirmative defense, courts have dismissed the counterclaims. *See Penn Mut. Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 WL 3294305, at *3 (D. Md. Aug. 20, 2010); *Penn Mut. Life Ins. Co. v. GreatBanc Trust Co.*, No. 09 C 6129, 2010 WL 2928054, at *5 (N.D. Ill. July 21, 2010) ("Counterclaims that mimic affirmative defenses are no less duplicative [than] counterclaims that mirror the plaintiff's request for declaratory relief."); *see also Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010) (collecting cases dismissing declaratory relief counterclaims duplicative of affirmative defenses). Thus, the Court must resolve whether Defendants' counterclaims and affirmative defenses are duplicative.

"A counterclaim is a cause of action which seeks affirmative relief, while an affirmative defense defeats the plaintiff's cause of action by denial or confession and avoidance." 61A Am. Jur. 2d Pleading § 276. Black's Law Dictionary defines an affirmative defense as "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations

in the complaint are true." *Black's Law Dictionary* 451 (8th ed. 1999). In contrast, a counterclaim is "a claim for relief asserted against an opposing party after an original claim has been made; especially, a defendant's claim in opposition to or as a setoff against the plaintiff's claim." *Id.* at 376. These definitions contemplate that a successful affirmative defense renders a plaintiff's claim void, whereas a successful counterclaim permits monetary recovery by the defendant. *See CMF Virginia Land, L.P. v. Brinson*, 806 F. Supp. 90, 93 (E.D. Va. 1992) (converting defendants' "affirmative defenses" to compulsory counterclaims because "the defendants' [counterclaims] cannot, as a matter of law, render their debt void, but still allows them the opportunity at trial to prove the alleged violation and their entitlement to recoupment damages."); *see also Silicon Graphics, Inc. v. ATI Techs., Inc.*, No. 06-cv-611-bbc, 2011 WL 322664, at *3 (W.D. Wisc. Jan. 31, 2011) ("One difference between a counterclaim and an affirmative defense is that resolution of a plaintiff's claim in favor of a defendant always moots the affirmative defense . . . .").

Here, assuming, *arguendo*, that Defendants could assert such counterclaims and were successful in doing so, Plaintiffs

7

would pay Defendants a $40 million judgment.[1] And though not entirely clear from the face of the pleading, it appears that Defendants do not seek this $40 million for themselves personally, but rather that it be applied toward whatever debt they owe Plaintiffs. (*See* Countercl. ¶ 103 ("Had no violation of Title 8.9A of the UCC occurred, XL would have collected over $40,000,000 from the Truland Entity Contracts and other Truland Entity collateral (vehicles etc.) in its possession. As a result of XL's violations of Title 8.9A of the UCC, the Trulands were damaged and suffered loss, including, without limitation, the loss of funds, money, property and other collateral for obligations *owing to XL and loss of security for the Trulands' obligations under the Indemnity Agreement*.") (emphasis added).) Defendants' counterclaims raise issues that, if successful, would reduce or eliminate the debt they owe to Plaintiffs, relief more properly sought through the assertion of affirmative defenses rather than counterclaims. Therefore, Plaintiffs' motion to dismiss the counterclaims will be granted. In light of this ruling, the Court does not have occasion to consider the merits of the counterclaims, which are, as noted, essentially affirmative defenses.

---

[1] It is worth noting that to the Court's knowledge, Defendants have personally pledged far less than $40 million they seek in damages. (*See* 12/19/14 Consent Order.)

## IV. Conclusion

For the reasons set forth above, the Court will grant Plaintiffs' motion and dismiss the counterclaims.  An appropriate order will follow.

|  |  |
|---|---|
|  | /s/ |
| March 3, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |